Nadine Lewis, Esq., SBN 179979
NADINE LEWIS, ATTORNEY AT LAW
1305 Pico Boulevard
Santa Monica, California   90405
Email:       nadine@nadine.esq
Office Telephone:  424.228.5109

Attorney for Plaintiffs, NATIONAL COALITION FOR MEN,
TYLER MCNAMARA, CONOR MCKIERNAN, NICHOLAS MILILLO, NICOLAS
MENDIOLA, and JORDAN FALCON

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL COALITION FOR MEN, a 501(c)(3) non-profit organization, TYLER MCNAMARA, an individual, CONOR MCKIERNAN, an individual, NICHOLAS MILILLO, an individual, NICOLAS MENDIOLA, an individual, and JORDAN FALCON, an individual,<br><br>          Plaintiffs,<br><br>     vs.<br><br>SELECTIVE SERVICE SYSTEM; JOEL C. SPANGENBERG, as acting Director of SELECTIVE SERVICE SYSTEM; and DOES 1-50, inclusive,<br><br>          Defendants. | Case No. 2:24-cv-04016<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>VIOLATION OF EQUAL PROTECTION UNDER THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs NATIONAL COALITION FOR MEN (hereinafter referred to as "NCFM"), TYLER MCNAMARA, (hereinafter referred to as MCNAMARA), CONOR MCKIERNAN, (hereinafter referred to as MCKIERNAN), NICHOLAS MILILLO, (hereinafter referred to as MILILLO), NICOLAS MENDIOLA, (hereinafter referred to as "MENDIOLA"), and JORDAN FALCON (hereinafter referred to as "FALCON"), (collectively referred to as "Plaintiffs"), bring this action against Defendants SELECTIVE SERVICE SYSTEM (hereinafter referred to as "SELECTIVE SERVICE") and its acting Director JOEL C. SPANGENBERG (hereinafter referred to as "SPANGENBERG") (collectively referred to as "Defendants"). Plaintiffs respectfully request injunctive and declaratory relief from Defendants to end sex-based discrimination in its military draft registration program and to treat all sexes equally.

## **INTRODUCTION**

1.      May 18, 2024, marks the 107th anniversary of the Selective Service System. The Military Selective Service Act ("Act") requires male citizens and immigrants between the ages of 18 and 26 to register with the Selective Service System to facilitate their conscription if the President initiates the military draft. By registering, a young man remains eligible for federal jobs, state-based student aid in thirty-one states, federally funded job training, and U.S. citizenship for males who are immigrants.

2.     *The Act does not require women to register.*

3.     If a young man fails to register, he will face harsh penalties, some of which may last a lifetime. Failure to register is a felony punishable by a fine of up to $250,000 and/or five (5) years imprisonment. These penalties are not limited to the individual who fails to register and may extend to a person who knowingly counsels, aids, or abets another to fail to comply with the registration requirement. Young men must register with the Selective Service System to be eligible for most federal employment, some state employment, security clearance for contractors, and job training under the Workforce Innovation and Opportunity Act. A majority of states link receiving a driver's license to registration so young men must be registered to receive a license, permit, or identification card.

4.     Currently, in the state of California the Senate Transportation Committee is considering SB 1081, a bill that would tie applying for or renewing a California drivers' license or California identification card to registering with the Selective Service System for those young men of draft age. Under this proposed legislation, young men, 16 years old, up to age 26, will be deemed to have agreed to automatic registration for the draft by placing their signature on a driver's license application.

5.     SELECTIVE SERVICE statistics suggest that more than one million men have been denied some government benefit because they failed to register. If the denial

of the benefit occurs after the man turns twenty-six, there is no possibility to cure his non-compliance and he will be denied significant government benefits for life.

6. The U.S. Citizenship and Immigration Services makes registration with the Selective Service System a condition for U.S. citizenship if the man first arrived in the United States before his 26th birthday. Failure to register may cause up to a 5-year delay of U.S. citizenship proceedings for immigrants.

7. Registration under the Act for the Selective Service System is discrimination on the basis of sex and is forbidden by the Equal Protection Clause of the United States Constitution. This discriminatory law burdens an entire class of citizens, draft-age men, to inferior legal status without regard to the fact that they may potentially lose liberty, life, or limb if called to war; all the while diminishing the capabilities of an entire class of citizens, draft-age women, who currently serve in all military positions, including combat roles.

8. Forty-four years ago, President Carter recommended to Congress that the Act be extended to cover women. Forty-three years ago, Justice Thurgood Marshall, called male-only registration *"one of the most potent remaining expressions of ancient canards about the proper role of women."* Women currently serve in every capacity in the U.S. military from the fields of combat to four-star general.

9. The exclusion of women from registration under the Act and the requirement that only men register violates the Due Process Clause of the Fifth

Amendment of the United States Constitution. This case seeks to end Defendants from discriminating on the basis of sex.

## BACKGROUND

10.     In *Rostker v. Goldberg*, 453 U.S. 57 (1981), male plaintiffs asserted that sex discrimination in the Selective Service System violated their rights, along with other draft-age men, to Equal Protection under the Fifth Amendment to the United States Constitution. In a sharply divided decision, with a vigorous dissent written by Justice Thurgood Marshall, the majority of the Justices ruled against the male plaintiffs on the basis that women were excluded from combat, and therefore, men and women were not similarly situated.

11.     In 2013, under the Obama administration, Secretary of Defense Leon E. Panetta and Chairman of the Joint Chiefs of Staff, Martin E. Dempsey, issued a Memorandum that officially rescinded the 1994 ban on women in combat. Secretary Panetta firmly stated, *"Success in our military base solely on ability, qualifications, and performance, is consistent with our values and enhances military readiness."* (Gen. Michael Hayden et al. Amicus Curiae, p. 7, NCFM, et al. v Selective Service System, et al. (2021)) (Leon E. Panetta, Sec'y of Def., and Martin E. Dempsey, Chairman of the Joint Chiefs of Staff, Memorandum for Secretaries of the Military departments Acting Under Secretary of Defends for Personnel and Readiness 1 (Jan. 24, 2018), https://dod.defense.gov/Portals/1/Documents/WISRJointMemo.pdf).

12.     The 2013 Memorandum gave the military until May 15, 2013, to submit "detailed plans for the implementation of this directive" and directed that integration of women into combat positions be completed "as expeditiously as possible" and no later than January 1, 2016.

13.     As the 2013 Memorandum notes, many changes occurred between the 1981 *Rostker* decision and 2013. In 2012, the military opened over 14,000 positions previously closed to women; by 2013, women served alongside men in Iraq and Afghanistan and were exposed to hostile enemy action.

14.     In 2016, Congress authorized the National Commission on Military, National, and Public Service ("NCMNPS") to study whether registration should be conducted "regardless of sex." National Defense Authorization Act ("NDAA") for Fiscal Year 2017, §§551(a), 555(c)(2)(A), 130 Stat. 2130, 2135. In 2020, NCMNPS published a report in which it recommended "eliminat[ing] male-only registration." (NCMNPS Report, 2020, P. 111)

15.     Accordingly, the rationale in *Rostker* no longer exists; as women serve alongside men in every capacity, in the air, at sea, and in the fields of combat. Therefore, male, and female servicemembers are similarly situated. With the legal basis requiring only males to register with the Selective Service System inapplicable, Defendants must treat all sexes equally and draw to a close discrimination on the basis of sex.

## **JURISDICTION AND VENUE**

16.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 which states "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs bring this action under the Fifth Amendment of the United States Constitution to challenge the Selective Service System which is sex-based discrimination against male citizens and immigrants by requiring them to register for the draft for possible induction into the U.S. military. Plaintiffs file this action against Defendants and all of them, in their official capacity as federal officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, for violation of their Constitutional rights.

17.     Under 28 U.S.C. § 1343(3) & (4), this Court has jurisdiction when the federal government deprives equal rights of citizens within the jurisdiction of the United States; and to secure equitable relief under any act of Congress providing for the protection of civil rights. Defendants and each of them in their official capacity in the federal government continue to violate the civil rights of male citizens and immigrants by requiring them to register with Selective Service System; imposing grave penalties upon them for failure to do so.

18.     The Court may grant declaratory relief and other necessary or proper relief pursuant to the declaratory Judgment Act, Title 28 U.S.C. § 2201, which allows

the issuance of declaratory judgments in cases with the courts' jurisdiction, restricted to cases and controversies in the constitutional sense and 28 U.S.C. § 1343(3) & (4).

19.     Venue is proper in this district pursuant to 28 U.S.C § 1391(e)(1)(B)(C) because of the events giving rise to this Complaint occurred in this District, or a substantial part of property that is the subject of the action is situated in this District and more than 50% of the Plaintiffs reside in Los Angeles County with Plaintiffs MCNAMARA, MCKIERNAN, and MILILLO living in Los Angeles County.

## PARTIES

20.     Plaintiff NCFM is a not-for-profit, 501(c)(3) education and civil rights corporation organized under the laws of the State of California and of the United States.

21.     NCFM is registered with the Combined Federal Campaign for non-profit organizations.

22.     NCFM is committed to ending harmful discrimination and stereotypes against boys, men, and their families. NCFM is a gender inclusive, nonpartisan, ethnically diverse organization that effects civil rights reform through advocacy, education, outreach services, and litigation.

23.     NCFM philosophically believes that the root causes of "gendered oppression" are gender roles, which developed for various reasons but were then

enforced by law in an unfair way on both sexes. These laws discriminate against all genders, in differing ways.

24.     NCFM assisted the California legislature in enacting legislation to protect men from paternity fraud and helped overturn unconstitutional laws that discriminated against male victims of domestic violence in *Woods v Horton* (2008) 167 Cal.App.4th 685. NCFM members were the prevailing appellants in the landmark California Supreme Court case *Angelucci v Century Supper Club* (2007) 41 Cal.4th 160, which held that women, people of color, gays and lesbians, and other groups that California businesses discriminated against based on protected personal characteristics did not have to first assert their right to equal treatment to an offending business in order to have standing to sue for unlawful discrimination under California's Unruh Civil Rights Act.

25.     NCFM has associational standing because some NCFM members, including MCNAMARA, MCKIERNAN, MILILLO, MENDIOLA, and FALCON, would otherwise have standing to sue in their own right, the interests NCFM seeks to protect are germane to NCFM's purpose and neither the claim asserted, nor the relief requested, requires the participation of individual NCFM members in this lawsuit.

26.     Some of NCFM's members are males ages 18-26 or who will be age 18-26 at some time relative to this lawsuit. The relief this action seeks is germane to the age-appropriate members of NCFM who are harmed by or subject to discrimination on

the basis of sex from the male-only registration requirements. They are United States citizens, who are not members of the military, students at military academies, or otherwise exempt from the draft. Most importantly, these members of NCFM support equal treatment of all sexes. Finally, some NCFM's members have or are likely to have male children or other loved ones who presently meet or will meet the criteria for registration upon reaching their 18th birthday.

27.     Plaintiff TYLER MCNAMARA is a male age 18-26, and a U.S. citizen residing in Los Angeles County. He is in the age group required by Defendants to register for the military draft and has recently registered for the military draft as is required of him as a male. He is harmed by or subject to discrimination on the basis of sex by the registration requirements. He is not a member of the military, a student at military academies, or otherwise exempt from the draft. Most importantly, he supports the equal treatment of all sexes.

28.     Plaintiff CONOR MCKIERNAN is a male age 18-26, and a U.S. citizen residing in Los Angeles County. He is in the age group required by Defendants to register for the military draft and has recently registered for the military draft as is required of him as a male. He is harmed by or subject to discrimination on the basis of sex by the registration requirements. He is not a member of the military, a student at military academies, or otherwise exempt from the draft. Most importantly, he supports the equal treatment of all sexes.

29.     Plaintiff NICHOLAS MILILLO is a male age 18-26, and a U.S. citizen residing in Los Angeles County. He is in the age group required by Defendants to register for the military draft and has recently registered for the military draft as is required of him as a male. He is harmed by or subject to discrimination on the basis of sex by the registration requirements. He is not a member of the military, a student at military academies, or otherwise exempt from the draft. Most importantly, he supports the equal treatment of all sexes.

30.     Plaintiff NICOLAS MENDIOLA is a male age 18-26, and a U.S. citizen residing in Riverside County. He is in the age group required by Defendants to register for the military draft and has recently registered for the military draft as is required of him as a male. He is harmed by or subject to discrimination on the basis of sex by the registration requirements. He is not a member of the military, a student at military academies, or otherwise exempt from the draft. Most importantly, he supports the equal treatment of all sexes.

31.     Plaintiff JORDAN FALCON is a male age 18-26, and a U.S. citizen residing in San Bernadino County. He is in the age group required by Defendants to register for the military draft and has recently registered for the military draft as is required of him as a male. He is harmed by or subject to discrimination on the basis of sex by the registration requirements. He is not a member of the military, a student at

military academies, or otherwise exempt from the draft. Most importantly, he supports the equal treatment of all sexes.

32.     Defendant SELECTIVE SERVICE is an independent agency within the Executive Branch of the Federal Government of United States of America. The SELECTIVE SERVICE collects and maintains information on young males potentially subject to military conscription. Male U.S. citizens and male immigrants between the ages of 18 and 26 are all required by law to register with the Selective Service System within thirty days of their 18th birthdays and must notify the SELECTIVE SERVICE within ten days of any changes to any of the information they provided on their registration cards, such as a change of address. A 2010 report by the General Accounting Office estimated the Selective Service System's registration rate at 92%, with the names and addresses of over 16.2 million people on file. The SELECTIVE SERVICE provides the names of all registrants to the Joint Advertising Marketing Research & Studies ("JAMRS") program for inclusion in the JAMRS Consolidation Recruitment Database. The names are distributed to various government agencies for recruiting purposes on a quarterly basis.

33.     Defendant SPANGENBERG is the acting Director of the Selective Service System. The Director of the SELECTIVE SERVICE is appointed by the President of the United States of America and confirmed by the Senate.

34.     Defendants DOES 1 through 50 are sued as fictious entities at this time and will be added to this Complaint by amendment when their true names are ascertained.

35.     Plaintiffs are informed and believe and thereon allege that each of the Defendants is responsible and liable for the unlawful and unconstitutional acts alleged herein.

## STATEMENT OF FACTS

36.     Plaintiffs restate and incorporate by reference, as though fully set forth herein, the allegations and statements contained in each of the above-referenced paragraphs.

37.     NCFM previously filed a similar action in the Central District Court of California. On August 18, 2017, NCFM filed a First Amended Complaint. The Central District Court of California dismissed NCFM without prejudice on a Motion to Dismiss and transferred the case to the Southern District Court of Texas, Houston Division, where one of the prior plaintiffs, whom the Court found had standing, resided.

38.     Plaintiffs filed a Motion for Summary Judgment which was granted by the Southern District of Texas on February 22, 2019. On August 13, 2020, the United States Court of Appeals for the Fifth Circuit reversed the Southern District and dismissed the case.

39.     On January 8, 2021, NCFM filed a Petition for a Writ of Certiorari with the United States Supreme Court.

40.     The National Organization for Women, and the Modern Military Association of America filed Amicus Briefs in support of NCFM's Petition. General Michael Hayden along with nine other military officers also filed an Amicus Briefs in support of NCFM's Petition. General Hayden's brief stated:

> "According to the logic underlying the current draft regime, men are more capable of serving in combat than women. Yet the vast majority of men in fact are not, and – most importantly – have no advantage in readiness over women, who the current statutory scheme forbids from registering. Such a regime makes no sense, either as a matter of Fifth Amendment law or of military planning. Doubling the pool of potential draftees would do more than give the military an opportunity to draw on a larger pool of qualified candidates to meet its needs in the face of a large-scale conflict. It would also permit the military to select the most qualified civilian candidates available for any given role in the military – meaning, a more qualified women could be chosen in the place of a less qualified man. Put differently, doubling the pool of potential draftees would raise the overall quality of the candidate pool and, in doing so, increase military readiness and aid the Nation's security."  (Gen. Michael Hayden et al. Amicus Curiae, p. 15-16, NCFM, et al. v Selective Service System, et al. (2021))

41.     On June 7, 2021, the Supreme Court denied the Petition. Justice Sotomayor cited the fact that Congress would be considering the issue in its next defense bill. Justice Sotomayor stated, "But at least for now, the Court's longstanding deference to Congress on matters of national defense and military affairs cautions

against granting review while Congress actively weighs the issue." (Statement of Justice Sotomayer, Pg. 3, 2021).

42.     Congress did, in fact, weigh in on the matter when it passed the next defense bill. In July 2021, the Senate Armed Services Committee voted 21-5 to add women to the draft registration system. The House Armed Services Committee approved the change in September in a 35-24 vote. The committee approval came after a congressionally mandated commission in 2020 recommended draft registration be expanded to include women, calling it a "*necessary and fair step.*"

43.     A small group of six Congressmembers were adamantly opposed to making women register and threatened to vote against the NDAA as a whole if the final bill included the provision to, in its words, *"draft our daughters."*

44.     In our government composed of a system of checks and balances, the Supreme Court has historically been a check on arbitrary actions of Congress. The comment above which references *'our daughters'* is the quintessential definition of *'arbitrary'* in that it appears to be based upon random choice or personal whim, rather than any rational or measured thought; nor is the comment based upon the various studies and memorandum which Congress itself authorized; all of which concluded that the draft should include all draft-aged citizens and immigrants without regard to their sex. Every study and military recommendation has unequivocally concluded that a gender-neutral draft promotes fairness in the military and is in the best interest of our

national security. The *'daughters'* comment alone makes the case that Congress failed to end discrimination arising from the Act on the basis of sex for arbitrary reasons.

45.     One of the six holdouts, Sen. Josh Hawley, R-Mo., led the charge against the provision in the Senate, he responded to reports that it would be removed from the NDAA by saying he "certainly hope[s] that is the case. *If it is not, then I will keep fighting for a vote on the Senate floor to strip this wrong and misguided provision out of the final bill."* General Hayden and the other military officers who submitted an Amicus Brief in support of women being included in the draft are certainly not misguided and their vast military experience, along with the study Congress authorized is not wrong. These six members of Congress dismiss the fact that registration for the draft does not mandate that all who register are, indeed, drafted; the process has always been *selective.* Each registrant would be drafted based upon their ability to serve, regardless of sex.

46.     Those six Congressmembers who opposed including female citizens and immigrants in the Selective Service System went against the Department of Defense, and their arbitrary views do not reflect the present roles of enlisted female servicemembers who serve in all branches of the U.S. military, including in combat roles. These six members of Congress who used political influence by threatening to hold up approval of the defense bill dismissed the fact that gender-neutral registration celebrates the achievements and capabilities of women who currently serve and readies

our country to launch the best possible national defense by allowing the military access to the most qualified people to serve, regardless of their sex.

47.    On June 7, 2021, the Supreme Court denied NCFM's Petition for Writ of Certiorari  and Justice Sotomayor forewarned that the Court would defer to Congress "at least for now." Three years and four months later and Congress has yet to enact gender-neutral registration. Every year since 2021 when the Supreme Court denied NCFM's Petition for Writ of Certiorari, Congress had the opportunity to act when they passed the annual defense bill which authorizes approximately $900 billion in programs and covers the entire Department of Defense as well as the nuclear program in the Department of Energy.

48.    To prevent tyranny, the U.S. Constitution established three separate but equal branches of government with each branch granted specific powers, limited only by checks and balances in place to avert absolutism by any branch. Congress is tasked with making laws and has been granted great deference by the judiciary related to military affairs. The Court in *Rostker* stated that, *"None of this is to say that Congress is free to disregard the Constitution when it acts in areas of military affairs…Deference does not mean abdication." Rostker* (1981) 453 U.S. 67, 70.

49.    Congress may enact laws, but the judiciary has the power to declare them unconstitutional. In our system of checks and balances, courts also guard against the concept of arbitrary Congressional action. With Congressional gridlock at an all time

high, the courts must also guard against arbitrary Congressional inaction. Congress is enacting fewer laws, engaging more gamesmanship which more often serves their own political interests but not their constituents. One member may have the political influence to block votes or through tactical delays keep legislation in committee to prevent a vote on the floor. As related to registration for the Selective Service System, this form of Congressional action or inaction is a threat to equal protection under the Fifth Amendment.

50.     The Framers drafted the Constitution with separation of powers, in part, to diminish the threat of arbitrary government action. Justice Stevens stated, "I see no reason why the character of their procedures may not be considered relevant to the decision whether the legislative product has caused a deprivation of liberty or property without due process of law." *Fullilove v. Klutznick* (1980) 448 U.S. 448, 248.

51.     When the Court denied NCFM's Petition for Certiorari in 2021, Justice Sotomayor stated that "it remains to be seen, of course, whether Congress will end gender-based registration under the Military Selective Service Act. But at least for now, the Court's long-standing deference to Congress on matters of national defense and military affairs cautions against granting review while Congress actively weighs the issue." (Statement of Justice Sotomayer, Pg. 3, 2021)

52.     General Hayden's Amicus Brief states that *"[r]equiring women as well as men to register for the selective service would send a clear message that the military*

*values the service of its women equally alongside the service of its men"* (Gen. Michael Hayden et al. Amicus Curiae, p. 21, NCFM, et al. v Selective Service System, et al. (2021))

53.     The rationale behind *Rostker* is therefore obsolete as women serve in every capacity from the fields of combat, in aircraft, at sea and four-star generals. The Act should reflect the present role of women who proudly serve in our military.

54.     At first glance, the prohibition of women from registering with the Selective Service System seems to confer a benefit to women. Limiting registration to men is based upon antiquated stereotypes of the capacity of women to serve and fully participate in military and civic life; and equally archaic and compartmentalized views that men lack the ability to remain at home as caretakers. The ban assumes women are unsuitable for military service notwithstanding their own individual abilities and predispositions. The limitation on registration to male citizens sanctifies these biases and encapsulates them in federal law.

55.     The Department of Defense advised Congress that allowing women to register would promote military preparedness *and fairness*. There is simply no justification for the inaction of Congress to prevent and combat discrimination on the basis of sex when they are tasked with passing laws to protect equal rights and uphold the Constitution.

56.     It has been 44 years since President Carter suggested Congress enact legislation to include women in the registration.

57.     It has been eight years since Congress authorized the NCMNPS to study women in the draft and their final report was published 2020 where they recommended *"eliminat[ing] male-only registration."* (NCMNPS Report, Pg. 111), and it has been three years and four months since the Court denied NCFM's Petition for Writ of Certiorari, deferring matters of the military to Congress.

58.     Congress failed to enact legislation in line with military studies and recommendations of the highest-ranking military officers. *"The United States military of the twenty-first century values equal opportunity for all qualified individuals to serve – regardless of race, sex, gender identity, or sexual orientation. The modern history of the military bears this out."* (Gen. Michael Hayden et al. Amicus Curiae, p. 4, NCFM, et al. v Selective Service System, et al. (2021))

59.     Plaintiffs seek to end discrimination on the basis of sex as related to registration with the Selective Service System, an action that is long overdue. While there has not been a conscription in almost 50 years, in light of the current state of world affairs, the possibility looms closer than ever before. Equalizing registration with the Selective Service System would ensure that all sexes have the same rights and responsibilities to serve their country if called upon to do so. Eliminating registration on the basis of sex simply acknowledges the reality that currently exists in our military.

A pool of draft-age people, regardless of their sex, will enhance military readiness, and contribute to our national security.

## **FIRST CAUSE OF ACTION**

(Fifth Amendment – Violation of the Equal Protection Clause)

60.     Plaintiffs restate and incorporate by reference, as though fully set forth herein, the allegations and statements contained in each of the above-referenced paragraphs.

61.     The Equal Protection Clause of the Fifth Amendment guarantees that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups. Under the Fifth Amendment, no person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability.

62.     The Military Selective Service Act denies male citizens and immigrants equal protection; the Act treats males and females of draft-age differently. Plaintiffs MCNAMARA, MCKIERNAN, MILILLO, MENDIOLA, and FALCON are between the ages of 18 and 26 and were required to register with the Selective Service System; no female citizens or female immigrants of draft-age were required to register under the Act.

63.     Presently, women to serve in every capacity in all the armed forces; including combat roles. Since 2013, there have been a slew of historic firsts, from the first female graduates of the Army Ranger School in 2015, to the first female Marine to lead an infantry platoon in 2018. By 2019, more than 600 female Sailors and Marines were serving in combat arms units previously restricted to men; while more than 650 women held Army combat roles and over 1,000 had accessed Army combat specialties. Therefore, male, and female citizens and immigrants are similarly situated in their roles in all branches of the U.S. Military; and discrimination against Plaintiffs by the Defendants on the basis of sex violates equal protection under the Fifth Amendment of the U.S. Constitution.

64.     The above-referenced conduct by Defendants violates the rights of Plaintiffs to equal treatment on the basis of sex under the Fifth Amendment of the United States Constitution and Plaintiffs have been harmed as a result of this discriminatory law.

## PRAYER FOR RELIEF

Therefore, Plaintiffs pray as follows for:

1. Injunctive relief enjoining Defendants from pursuing its policy to require male citizens and immigrants to register with the Selective Service System; and to end discrimination on the basis of sex in its military draft registration program and to treat all sexes equally within the Selective Service System;

NATIONAL COALITION FOR MEN v SELECTIVE SERVICE SYSTEM
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

2. Declaratory relief regarding the respective rights of Plaintiffs and all Defendants as set forth in this Complaint to issue a declaratory judgment that the practices complained of in this Complaint are unlawful and violate the Fifth Amendment to the U.S. Constitution;

3. Reasonable Attorney fees and costs related to this action pursuant to 42 U.S. Code § 1988 - Proceedings in vindication of civil right and any other provision of law which may be applicable; and,

4. Any other relief that the Court deems in the furtherance of justice.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury of all issues and each and every cause of action so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Civil Rights Act of 1991Plaintiffs demand a trial by jury on all causes of action so triable.[1]

Respectfully Submitted.

Dated: May 14, 2024                    NADINE LEWIS, ATTORNEY AT LAW

By: *Nadine Lewis, Esq.*

Nadine Lewis, Esq.,
Attorney for Plaintiffs, NATIONAL
COALITION FOR MEN, TYLER
MCNAMARA, CONOR MCKIERNAN,
NICHOLAS MILILLO, NICOLAS
MENDIOLA, and JORDAN FALCON

---

[1] Ms. Lewis would like to thank her longtime law clerk Spenscer Greenberg for her thoughtful edits and meticulous research on this Complaint.