BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
LAUREN A. WETZLER
Deputy Director
MICHAEL J. GERARDI (DC Bar No. 1017949)
ANDREW E. CARMICHAEL
Senior Trial Counsel
ANDREW J. RISING
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Rm #12002
Washington, DC 20005
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: michael.j.gerardi@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONAL COALITION FOR MEN, *et al.*,<br><br>                    *Plaintiffs*,<br><br><br>        v.<br><br><br>SELECTIVE SERVICE SYSTEM, *et al*.,<br><br>                    *Defendants*. | CASE NO. 2:24-CV-4016<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br><br>Honorable André Birotte Jr.<br>**United States District Judge** |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

    I.      The Military Selective Service Act ...........................................2

    II.     The Prior *NCFM* Litigation...................................................5

    III.   This Litigation ......................................................................6

STANDARD OF REVIEW ...................................................................................6

ARGUMENT .......................................................................................................7

    I.      Plaintiffs Lack Standing .......................................................7

          A.     The Individual Plaintiffs Lack Standing.......................8

          B.     NCFM Lacks Standing ...............................................12

    II.     Plaintiffs' Claim Is Foreclosed By *Rostker* ........................12

CONCLUSION....................................................................................................15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Agostini v. Felton,*
    521 U.S. 203 (1997)..........................................................................13

4

5

*Allen v. Wright,*
    468 U.S. 737 (1984)............................................................................8

6

7

*Balistreri v. Pacifica Police Dept.,*
    901 F.2d 696 (9th Cir. 1988) ............................................................7

8

9

*Ballentine v. U.S.,*
    486 F.3d 806 (3d Cir. 2007) ............................................................14

10

11

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)..............................................................................7

12

13

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .................................................................. 7, 8, 10

14

15

*Ecological Rights Found. v. Pac. Lumber Co.,*
    230 F.3d 1141 (9th Cir. 2000) ........................................................12

16

17

*Elgin v. U.S. Dep't of Treasury,*
    641 F.3d 6 (1st Cir. 2011)................................................................14

18

19

*Gamble v. Pac. Nw. Reg'l Council of Carpenters,*
    Case No. 2:14-cv-455RSM, 2015 WL 402782
    (W.D. Wash. Jan. 29, 2015)..............................................................7

20

21

*Laird v. Tatum,*
    408 U.S. 1 (1972)..............................................................................10

22

23

*Lopez v. Coombe-Hesperia Road, LLC,*
    Case No. EDCV20-0052 JGB (SHKx), 2020 WL 8413519
    (C.D. Cal. Oct. 29, 2020) ............................................................8, 12

24

25

26

27

28

*Lujan v. Def. of Wildlife*,
   504 U.S. 555 (1992) ................................................................. 9

*Murthy v. Missouri*,
   144 S. Ct. 1972 (2024) ......................................................... 7, 12

*Nat'l Coal. for Men v. Selective Serv. Sys.* ("*NCFM*"),
   969 F.3d 546 (5th Cir. 2020);
   *cert. denied,* 141 S. Ct. 1815 (2021) ..................................... *passim*

*Nat'l Coal. for Men v. Selective Serv. Sys.* ("*C.D. Cal. NCFM*"),
   Case No. CV 13-2391 (C.D. Cal. Apr. 4, 2013) ............................. 1, 9

*Nat'l Coal. for Men v. Selective Serv. Sys.,* ("*S.D. Tex. NCFM*"),
   355 F. Supp. 3d 568 (S.D. Tex. 2019) ..................................... 6, 11

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) .................................................... 7

*Nunez-Reyes v. Holder*,
   646 F.3d 684 (9th Cir. 2011) .................................................. 13

*Olagues v. Russoniello*,
   797 F.2d 1511 (9th Cir. 1986) (en banc),
   *vacated as moot on other grounds*, 484 U.S. 806 (1987)) ............... 9, 10

*Parks Sch. of Bus., Inc. v. Symington*,
   51 F.3d 1480 (9th Cir. 1995) .................................................... 7

*Raines v. Byrd*,
   521 U.S. 811 (1997) ............................................................... 7

*Robinson v. United States*,
   586 F.3d 683 (9th Cir. 2009) .................................................... 7

*Rodriguez de Quijas v. Shearson/Am. Express Inc.*,
   490 U.S. 477 (1989) .............................................................. 13

iii

*Rostker v. Goldberg,*
    453 U.S. 57 (1981)..................................................................... *passim*

*Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.,*
    468 U.S. 841 (1984)...................................................................8

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)...................................................................8

*Steel Co. v. United Citizens for a Better Environment,*
    523 U.S. 83 (1998).....................................................................9

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009).................................................................12

*United States v. Mendoza,*
    464 U.S. 154 (1984)...................................................................9

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State,*
    454 U.S. 464 (1982)...................................................................9

**<u>Statutes</u>**

10 U.S.C. 652(a)(4)...........................................................................3

10 U.S.C. 6015 (1988).......................................................................3

10 U.S.C. 8549 (1988).......................................................................3

50 U.S.C. § 3801, *et seq.*..................................................................2

50 U.S.C. § 3802(a)............................................................................2

50 U.S.C. § 3813.............................................................................11

50 U.S.C. §§ 3802(a)..........................................................................2

50 U.S.C. §§ 3803(a)..........................................................................2

iv

50 U.S.C. §§ 3809 ..................................................................................2

50 U.S.C. §§ 3811(a) ............................................................................2

50 U.S.C. §§ 3811(f) .............................................................................2

## **Other Authorities**

Bryan A. Garner et al.,
    THE LAW OF JUDICIAL PRECEDENT 29 (2016)…………………………15

FY2022 NDAAH.R. 4350,
    117th Cong. §513……………………………………………..……..5

FY2023 NDAA, S. 4543,
    117th Cong. § 521……………………………………………..………5

FY2023 NDAA: Selective Service and Draft Registration, CRS Insight,
Updated January 12, 2023,
    available at http://crsreports.congress.gov/product/pdf/IN/IN11973............5

Inspired to Serve, Executive Summary, The Final Report of the National
Commission on Military, National, and Public Service (March 2020),
    *available at* https://perma.cc/7726-DZCZ..............................................4

Pub. L. No. 102-190, 105 Stat. 1365-67 (1991) ................................. 2, 3

Pub. L. No. 114-328, 130 Stat. 2000 (2016)............................................4

Pub. L. No. 103-160, 105 Stat. 1659-90 (1993) .....................................3

Selective Service Sys., *Online Address Change Form*,
    https://www.sss.gov/verify/update-info/.....................................................11

Senate Comm. On Armed Servs., FY25 NDAA Executive Summary
(June 2024),
    *available at* https://perma.cc/V3T2-N379....................................................5

Tr. of Hearing on Final Recommendations and Report of the
National Commission on Military, National, and Public Service
before the Senate Committee on Armed Services, 117th Cong.,
1st Sess. (Mar. 11, 2021),
        *available at* https://perma.cc/8UXP-JXCC.............................................5

Tr. of Hearing On Recommendations of the National Commission on Military,
National, and Public Service before the House Armed Services Committee, 117th
Cong., 1st Sess. (May 19, 2021), video available at
https://www.youtube.com/watch?v=N90tvUb6Fow&t=4229s……………...5

# INTRODUCTION

Since the 1940s, the Military Selective Service Act ("MSSA") has required all male citizens and residents of the United States to register with the Selective Service System as part of the United States' policy for preparedness in the event of a military crisis. Congress has considered whether women should be registered for the draft on multiple occasions over the decades, but a bill modifying the registration system to include women (or to repeal the registration requirement altogether) has never become law. Numerous legal challenges to the male-only draft registration requirement have also been rejected, including *Rostker v. Goldberg*, 453 U.S. 57 (1981), wherein the Supreme Court upheld the constitutionality of the MSSA against claims that it violates the Fifth Amendment to the Constitution. More recently, in *Nat'l Coal. for Men v. Selective Serv. Sys.* ("*NCFM*"), 969 F.3d 546, 548 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1815 (2021), the U.S. Court of Appeals for the Fifth Circuit reaffirmed that the prerogative for overruling *Rostker* belongs to the Supreme Court, and the Supreme Court declined the request of Plaintiff National Coalition for Men ("NCFM") to reconsider *Rostker*.

This lawsuit seeks to revive the exact same claim Plaintiff NCFM raised in the Fifth Circuit and the Supreme Court. But neither NCFM nor its individual members have suffered a concrete, particularized injury from the MSSA's registration requirement. They therefore lack standing to bring this claim in federal court. But even if they had standing, the complaint would be subject to dismissal for failure to state a claim as a matter of law. *Rostker* is still a binding decision of the Supreme Court, and district courts do not have discretion to depart from it. The Supreme Court reinforced that reality just three years ago by denying a petition for certiorari from Plaintiff NCFM. For these reasons, the Court should dismiss the complaint pursuant to Rule 12(b).

# BACKGROUND

## I.   The Military Selective Service Act

The current Selective Service registration requirement dates back to the reinstitution of the military draft in 1940.  With the passage of the Selective Training and Service Act of 1940, males who had reached their 21st birthday but had not yet reached their 36th birthday were required to register with local draft boards.  Later, when the U.S. entered the Second World War, all males from their 18th birthday until the day before their 45th birthday were made subject to military service, and all males from their 18th birthday until the day before their 65th birthday were required to register. After the Second World War, Congress formalized the Selective Service registration scheme by enacting the MSSA, 50 U.S.C. § 3801, *et seq.*, which requires male citizens and residents of the United States between the ages of 18 and 26, with certain exceptions, to register with a federal agency known as the Selective Service System.   50 U.S.C. §§ 3802(a), 3803(a), 3809.   Males who fail to register or otherwise comply with the MSSA and its implementing regulations may be subject to certain penalties and denied federal benefits. *Id.* §§ 3811(a), 3811(f). The MSSA does not require females to register.  *See* 50 U.S.C. § 3802(a).

In 1980, President Carter recommended to Congress that the MSSA be extended to include a requirement to register females. *See Rostker*, 453 U.S. at 60.  Congress declined to do so after "consider[ing] the question at great length" with "extensive testimony and evidence." *Id.* at 61, 72.  The Supreme Court rejected an equal protection challenge under the Fifth Amendment's due process clause to the MSSA's male-only draft registration requirement the next year, relying on, among other things, the fact that females could not assume combat roles in the military, as well as deference to Congress's considered judgment about how to run the military. *Id.* at 78-79.

Congress revisited the draft in 1991, after it repealed restrictions on women flying combat aircraft.  See Pub. L. No. 102-190, § 531, 105 Stat. 1365 (1991),

repealing 10 U.S.C. 8549 (1988), and modifying 10 U.S.C. 6015 (1988). It established the Presidential Commission on the Assignment of Women in the Armed Forces and directed it to report on the implications of assigning women to combat positions, and of requiring women to register for the draft. Pub L. No. 102-190, §§ 541, 542(c)(3) & (4), 543(c), 105 Stat. 1365-67 (1991). In its report, the commission issued a recommendation in favor of maintaining the draft in its current form. Report of the Presidential Commission on the Assignment of Women in the Armed Forces 40 (Nov. 15, 1992).

In 1993, Congress acted to repeal the statutory ban on women serving on combat ships. See Pub. L. No. 103-160, § 541, 107 Stat. 1659 (1993), repealing 10 U.S.C. 6015 (1988). Rather than change the draft requirement, Congress chose to further monitor the integration of women into combat roles. It enacted legislation requiring DOD to notify Congress of further changes to military policy on assignment of women to combat units or to units whose mission requires routine engagement in direct combat on the ground and explain its views on the constitutionality of the MSSA in conjunction with any changes. Pub. L. No. 103-160, § 542(a), § 542(b)(1) & (b)(4), § 542(b)(3), 107 Stat. 1659-60 (1993). In 2006, Congress modified this reporting policy to take into account a policy of DoD promulgated in 1994, "by which female members of the armed forces are restricted from assignment to units and positions below brigade level whose primary mission is to engage in direct combat on the ground." 10 U.S.C. 652(a)(4).

DoD revoked the 1994 policy in 2013, "effectively removing the remaining barrier to the integration of women into all military occupational specialties and career fields." Memo. From Secretary of Defense Ashton Carter Re. "Implementation Guidance for the Full Integration of Women in the Armed Forces," at 1 (Dec. 3, 2015). Today, "[a]nyone, who can meet operationally relevant and gender neutral standards, regardless of gender, should have the opportunity to serve in any position." *Id.* In recognizing that repeal of the 1994 rule was "the continuation

of a deliberate, methodical, evidence-based, and iterative process" of integration, then-Secretary of Defense Carter explained that "[i]ntegration provides equal opportunity for men and women who can perform the tasks required; it does not guarantee that women will fill these roles in any specific number or at any set rate." *Id.* at 1, 3.  Then-Secretary Carter approved the implementation plans for this policy change in a memorandum issued on March 9, 2016.  Memo. From Secretary Ashton Carter Re. "Approval of Final Implementation Plans for the Full Integration of Women in the Armed Forces," at 1 (Mar. 9, 2016).

Congress again considered male-only registration in the context of the 2017 National Defense Authorization Act.  The Senate version of that bill would have required females to register,  S. 2943, 114th Cong. § 591 (as passed by Senate, June 21, 2016), but the final law instead created a commission to study the military Selective Service process to determine, among other questions, whether the process was needed at all and, if so, whether to conduct it "regardless of sex," National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 551, 555, 130 Stat. 2000, 2130, 2135 (2016).

In its final report, issued March 25, 2020, the Commission recommended that both males and females should be required to register with the Selective Service. *See* Inspired to Serve, Executive Summary, The Final Report of the National Commission on Military, National, and Public Service (March 2020), *available at* https://perma.cc/7726-DZCZ.  Congress has held hearings on the Commission's

report,[1] has considered proposals to amend or repeal the MSSA,[2] and is currently considering proposals to amend the MSSA to include females.[3] *See also* Compl. ¶¶ 41–46 (recounting deliberations in Congress about a universal registration requirement in 2021).

## II.    The Prior *NCFM* Litigation

Plaintiff NCFM, joined by two of its members, initially challenged the constitutionality of the MSSA in this Court in 2013. *See Nat'l Coal. for Men v. Selective Serv. Sys.* ("*C.D. Cal. NCFM*"), No. CV 13-2391 (C.D. Cal. Apr. 4, 2013); *See* Compl. ¶¶ 37–39. In 2016, this Court found that the plaintiffs had standing to challenge the MSSA and transferred the matter to the U.S. District Court for the Southern District of Texas, where venue was proper. *C.D. Cal. NCFM*, 2016 WL 11605246, at *1-2 (C.D. Cal. Nov. 9, 2016). In 2019, the Texas court concluded that *Rostker* was not a controlling precedent, because, in its view, "[t]he dispositive fact in *Rostker*—that women were ineligible for combat—can no longer justify the [Selective Service Act]'s gender-based discrimination, because women can serve in

---

[1] *See* Tr. of Hearing on Final Recommendations and Report of the National Commission on Military, National, and Public Service before the Senate Committee on Armed Services, 117th Cong., 1st Sess. (Mar. 11, 2021), available at https://perma.cc/8UXP-JXCC; Tr. of Hearing On Recommendations of the National Commission on Military, National, and Public Service before the House Armed Services Committee, 117th Cong., 1st Sess. (May 19, 2021), video available at https://www.youtube.com/watch?v=N90tvUb6Fow&t=4229s (no transcript available).

[2] *See* FY2023 NDAA, S. 4543, 117th Cong. § 521, FY2022 NDAAH.R. 4350, 117th Cong. §513 and S. 2792, 117th Cong. §511; *see also* FY2023 NDAA: Selective Service and Draft Registration, CRS Insight, Updated January 12, 2023, available at http://crsreports.congress.gov/product/pdf/IN/IN11973.

[3] *See* Senate Comm. On Armed Servs., FY25 NDAA Executive Summary (June 2024) at 3, *available at* https://perma.cc/V3T2-N379.

5

combat." *Nat'l Coal. for Men v. Selective Serv. Sys.* ("*S.D. Tex. NCFM*"), 355 F. Supp. 3d 568, 576 (S.D. Tex. 2019). The district court then entered a declaratory judgment that the all-male registration requirement violated the Constitution.

The Fifth Circuit reversed the district court on appeal. Although the court of appeals agreed that facts had changed since *Rostker*, it nonetheless held that it could not "ignore a decision from the Supreme Court unless directed to do so by the Court itself." *Nat'l Coal. for Men v. Selective Serv. Sys*. ("*NCFM*"), 969 F.3d 546, 548 (5th Cir. 2020) (citation omitted). The Fifth Circuit then concluded that the plaintiffs' claims were foreclosed by *Rostker* and ordered their case dismissed. *Id.* The Supreme Court denied certiorari. 141 S. Ct. 1815 (2021). In a statement accompanying the denial of certiorari, Justice Sotomayor, joined by Justice Breyer and Justice Kavanaugh, acknowledged that "[t]he role of women in the military has changed dramatically since [*Rostker*]," but explained that denial was still appropriate in light of Congress's continued consideration of the Commission report. *Id.*

## III.    This Litigation

NCFM, along with members McNamara, McKiernan, Milillo, Mendiola, and Falcon, filed this suit on May 14, 2024. Compl., ECF No. 1. NCFM is a not-for-profit organization. Compl. ¶¶ 20–26. The individual plaintiffs are all men between the ages of 18 and 26 who reside in southern California and have recently registered for Selective Service. *Id.* ¶¶ 27–31. The one-count complaint alleges that the MSSA violates the Fifth Amendment of the U.S. Constitution by denying equal protection of the laws to Plaintiffs, who are required to register for the draft and comply with the MSSA, while their similarly situated female counterparts are not required to register. *Id.* ¶¶ 60–64.

## STANDARD OF REVIEW

A Rule 12(b)(1) motion scrutinizes whether Plaintiffs have met their burden of showing this Court has subject matter jurisdiction over this dispute. "No presumptive truthfulness attaches to plaintiff's allegations" regarding subject matter

jurisdiction; "[o]nce challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citations omitted).

A Rule 12(b)(6) motion tests the legal sufficiency of claims alleged in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). "Leave to amend need not be granted, and dismissal may be ordered with prejudice, if amendment would be futile[,]" such as when a claim "fails as a matter of law." *Gamble v. Pac. Nw. Reg'l Council of Carpenters*, No. 2:14-cv-455RSM, 2015 WL 402782, at *2, *7 (W.D. Wash. Jan. 29, 2015).

## ARGUMENT

### I. Plaintiffs Lack Standing

In order to invoke the Court's jurisdiction, plaintiffs "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citations omitted).  As part of this threshold showing, Plaintiffs must show that they have standing to bring suit. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). In order to demonstrate standing, Plaintiffs must show they have "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *Clapper*, 568 U.S. at 409). This inquiry is "especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). Here, the amended complaint is bereft of any allegation that would demonstrate that Plaintiffs have standing to challenge the MSSA.

### A.    The Individual Plaintiffs Lack Standing

Plaintiffs McNamara, McKiernan, Milillo, Mendiola, and Falcon have failed to establish a sufficient injury for purposes of Article III standing.  The complaint states that each of them is "harmed by or subject to discrimination on the basis of sex by the registration requirements," Compl. ¶¶ 27-31, without explaining how or why they have suffered any "concrete" injury that is "real" and "not abstract." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016). Conclusory statements of this sort are insufficient to demonstrate standing.  *Lopez v. Coombe-Hesperia Road, LLC*, No. EDCV20-0052 JGB (SHKx), 2020 WL 8413519, at \*3 (C.D. Cal. Oct. 29, 2020) (granting Rule 12(b)(1) motion because "conclusory statements about Plaintiff's plans to return to DVMG" were "not an adequate response to Defendant's 12(b)(1) factual attack on standing").

Nor is there any possibility that Plaintiffs can demonstrate a harm cognizable under Article III.  Because these individuals have already registered with Selective Service, they are not subject to any action to enforce the requirements of the MSSA. *See, e.g., Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 853 (1984) (noting that non-registrant becomes eligible for student aid as soon as he registers). Nor can they credibly argue that the prospect of being drafted constitutes a concrete harm.  Whether there would ever be a war or other national emergency that would prompt Congress to reinstate draft procedures is entirely hypothetical and far too speculative to support standing.  *See Clapper*, 568 U.S. at 401.

Nor can Plaintiffs contend that requiring only men and not women to register poses a *de facto* injury to them because it is unconstitutional.  The mere desire that the government adopt policies consistent with a plaintiff's view of the Constitution is not sufficient to confer standing under Article III.  *See Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with the law is not sufficient, standing alone, to confer jurisdiction on a federal court.").  Article III does not create "publicly funded forums

8

for the ventilation of public grievances," *see Valley Forge Christian Coll. v. Am. United for Separation of Church & State*, 454 U.S. 464, 473 (1982), nor are the federal courts an appropriate forum for plaintiffs to obtain policy changes they prefer. *See Steel Co.*, 523 U.S. at 106-07 (plaintiff lacks standing based on "'undifferentiated public interest' in faithful execution of [a statute]") (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 577 (1992)).

The Government recognizes that it is not writing on a clean slate with respect to the Article III standing of men who have already registered for the draft. Two district court decisions (one by another judge of this Court, and one by a court in Texas) in the prior *NCFM* litigation concluded that NCFM's members had standing to challenge the MSSA. Ultimately, Defendants prevailed in that litigation on other grounds, and the federal government is not precluded from renewing other arguments it made in those cases for dismissal. *See United States v. Mendoza*, 464 U.S. 154, 162–63 (1984). And as explained below, prior decisions erred in conferring standing on members of NCFM who have registered for Selective Service but otherwise allege no specific burden or harm from the MSSA's exclusion of women from registration.

Before the initial *NCFM* case was transferred to the Southern District of Texas, a judge of this Court held that an individual member of NCFM had standing to bring a challenge to draft registration. *C.D. Cal. NCFM*, 2016 WL 11605246, at *1-2. The Court relied on a Ninth Circuit decision that found a plaintiff to have standing "where the government required plaintiff to prove citizenship when requesting a bilingual ballot, but did not require such proof when people requested English language ballots." *Id.* at *2 (citing *Olagues v. Russoniello*, 797 F.2d 1511, 1518 (9th Cir. 1986) (en banc), *vacated as moot on other grounds*, 484 U.S. 806 (1987)). The Court applied the reasoning of *Olagues* and held that the individual plaintiffs had standing on the grounds that the Government required them to register and provide address updates to the SSS, but "does not impose such obligations on women." *Id.*

9

Respectfully, the Court erred in its analysis. *Olagues* involved very different factual circumstances and legal claims from this case. In *Olagues*, the plaintiff's "request for a bilingual ballot triggered an investigation of his INS records by the FBI and INS and an interview by the local District Attorney" at a time when plaintiff was running for political office, which the Ninth Circuit found to have a chilling effect that supported his standing to sue. *Olagues*, 797 F.3d at 1518.[4]

No such comparable circumstances exist here. Plaintiffs have not pled any kind of "chilling" effect on their First Amendment freedoms—much less an intrusive investigation—resulting from their being required to register for the Selective Service, let alone from the fact that women are not so required. Indeed, no Plaintiff has alleged any negative practical effects from the MSSA's registration requirements. Not only does the complaint fail to identify any specific, concrete harm that Plaintiffs have suffered or are suffering as a result of having registered; it

---

[4] While *Olagues* further held that the Supreme Court's decision in *Laird v. Tatum*, 408 U.S. 1 (1972), "recognizes that a plaintiff has standing when the government improperly imposes an affirmative obligation on him, 797 F.2d at 1518, this is an overreading of *Laird*. In *Laird*, plaintiffs alleged that they were subject to a government surveillance program that chilled their First Amendment freedoms. The Supreme Court held that they lacked standing because "allegations of a subject 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." 408 U.S. at 13-14. In reaching that conclusion, the court acknowledged a line of case law finding that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment right." *Id.* at 11. That First Amendment principle, however, is not at issue in the instant suit. Moreover, the Supreme Court made clear in *Laird* that "these decisions have in no way eroded the 'established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action." *Id.* at 13. This requirement of a direct, imminent injury to establish standing has been since reaffirmed by the Supreme Court. *See Clapper*, 568 U.S. at 417-18 (reaffirming that under *Laird*, subjective fear of surveillance was not sufficient to establish standing).

10

1    also fails to establish how they have been harmed at all by merely registering. In

2    particular, Plaintiffs fail to show how they have been harmed because women are *not*

3    required to register.

4         After the initial *NCFM* litigation was transferred to the Southern District of

5    Texas, a judge of that court also concluded that men registered with Selective Service

6    have standing to challenge it.  Like the prior ruling from this Court, the Texas court

7    held that there was "a sufficient injury for Article III standing" because individuals

8    are required to register with Selective Service and have "a continuing obligation to

9    update [Selective Service] with changes to their information."  *S.D. Tex. NCFM*,

10   2018 WL 1694906, at *3 (S.D. Tex. Apr. 6, 2018); *see also* 50 U.S.C. § 3813 (stating

11   it is "the duty of every registrant to keep his local board informed as to his current

12   address and changes in status as required by such rules and regulations as may be

13   prescribed by the President").

14        The district court in Texas was eventually reversed on the merits by the Fifth

15   Circuit, 969 F.3d 546, but the district court's ruling on standing was also in error.

16   The allegations made in that case (which are materially similar to those Plaintiffs

17   make here) fail to demonstrate an injury sufficiently concrete and particular to serve

18   as a basis for a federal lawsuit.  Plaintiffs have already registered for the draft, and

19   therefore have not subjected themselves to the potential penalties for non-

20   registration.  And Plaintiffs have not alleged that they intend to take any actions that

21   would necessitate updating their information with Selective Service, such as moving

22   to a new address.  Even if they did, updating registration is no more burdensome than

23   the process of registering in the first place, which Plaintiffs already admit they have

24   done.    Selective    Service    Sys.,    *Online    Address    Change    Form*,

25   https://www.sss.gov/verify/update-info/.

26        Standing doctrine requires a "concrete link between [the plaintiffs'] injuries

27   and the defendants' conduct" in order to "prevent [courts] from 'exercising . . .

28   general legal oversight' of the other branches of Government."  *Murthy*, 144 S. Ct.

at 1996.  Plaintiffs fail to allege an injury that would form a sufficient basis for this Court to conduct "oversight" over an issue to which the Supreme Court has long given great deference to Congress. *See NCFM*, 141 S. Ct. at 1815.  Accordingly, dismissal for lack of standing under Rule 12(b)(1) is appropriate.

### B.  NCFM Lacks Standing

NCFM asserts that it has associational standing "because some NCFM members, including [the individual plaintiffs], would otherwise have standing to sue in their own right." Compl. ¶ 25.  An organization has "standing to bring suit on behalf of [their] members when" among other things their "members would otherwise have standing to sue in their own right." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000). But NCFM merely recites the legal conclusion that it meets these standards while providing virtually no details to show that its claim is even plausible.  That is not sufficient to survive a Rule 12(b)(1) motion.  *Lopez*, 2020 WL 8413519, at *3.  To establish associational standing, the Supreme Court has "required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).  NCFM's failure to allege any facts that show that a single member has standing, as explained above, is fatal to its attempt to invoke the Court's jurisdiction.

## II.  Plaintiffs' Claim Is Foreclosed By *Rostker*

Turning to the merits, the gravamen of Plaintiffs' complaint is that changes to military policy have made men and women "similarly situated" for purposes of draft registration and render the MSSA's exclusion of women unconstitutional.  *See* Compl. ¶¶ 15, 63.  But their claim that the MSSA violates the principle of equal protection enshrined in the Fifth Amendment is identical to the claim the Supreme Court rejected in *Rostker*, and that NCFM unsuccessfully attempted to relitigate in Texas. Just three years ago, the Supreme Court denied a writ of certiorari in the prior *NCFM* case in deference to Congress's reconsideration of draft registration.

12

Plaintiffs' complaint fails to state a claim upon which relief can be granted because *Rostker* continues to bind this Court and requires dismissal of their claim.

To circumvent *Rostker*, Plaintiffs suggest that because the legislative efforts to reform the MSSA alluded to in the statement accompanying the Supreme Court's denial certiorari in *NCFM* have not yet resulted in universal registration (or some other amendment to the MSSA), the time has come for the Court to overrule *Rostker*. Compl. ¶ 47. But the Supreme Court's statement about proposals to amend the MSSA, signed by just three justices (one of whom has since retired), does not purport to speak for the entire Supreme Court, which may have chosen to deny certiorari for any number of reasons. *See* S. Ct. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion."). Nor, in any event, did that statement set a time limit by which Congress must act and recognized the Supreme Court's "longstanding deference to Congress on matters of national defense and military affairs." *NCFM* 141 S. Ct. at 1815. As explained above, Congress's consideration of this issue continues, and it "remains to be seen . . . whether Congress will end gender-based registration under the Military Selective Service Act." *Id.*

More fundamentally, the prerogative of deciding when those conditions are met, and whether or not *Rostker* should be reconsidered, lies with the Supreme Court, not this Court. It is well established that the lower courts are bound to follow Supreme Court precedent, even when the underpinnings of a decision have been called into question by factual and legal changes, and must "leav[e] to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express Inc.*, 490 U.S. 477, 484 (1989); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[W]e do not hold[] that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."); *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) ("we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court." (citation omitted)); Bryan A. Garner et al., THE LAW OF JUDICIAL PRECEDENT 29

1  (2016) ("Lower courts are bound even by old and crumbling high-court precedent—

2  until the high court itself changes direction.").

3      The Fifth Circuit recognized as much in *NCFM*.  In reversing a district court

4  order that concluded *Rostker* was distinguishable in light of changes in military

5  policy and declared the MSSA unconstitutional, the Fifth Circuit held that while the

6  facts underpinning *Rostker* had changed, plaintiffs' sex-based equal protection

7  claims were nevertheless foreclosed. The district court was not empowered to

8  "ignore a decision from the Supreme Court unless directed to do so by the Court

9  itself." 969 F.3d at 548 (citation omitted).  That court further noted that *Rostker* also

10  "deferr[ed] to Congress's determination that the administrative and operational

11  burdens of [expanding the draft to include females] exceeded the utility," which

12  Plaintiffs fail to address in their complaint.  969 F.3d at 549 (citing *Rostker*, 453 U.S.

13  at 81-82).  The Supreme Court itself denied certiorari shortly thereafter, even though,

14  as several Justices noted, "the role of women in the military has changed dramatically

15  since [*Rostker*]." *NCFM*, 141 S. Ct. at 1815.

16      It is therefore appropriate to reject Plaintiffs' sex-based equal protection

17  challenge under *Rostker*, without a need for further inquiry, as the Fifth Circuit and

18  First Circuit have both done when asked to overrule *Rostker* in recent years.  *See*

19  *Elgin v. U.S. Dep't of Treasury*, 641 F.3d 6, 24 (1st Cir. 2011) (Stahl, J., concurring)

20  ("[I]t would not be for this court to determine what, if any, impact these

21  developments had on the continued vitality of *Rostker*, a task left solely to the

22  Supreme Court."); *Nat'l Coal. For Men*, 969 F.3d at 548 (similar).  *Cf. Ballentine v.*

23  *U.S.*, 486 F.3d 806, 813 (3d Cir. 2007) ("[T]his Court regrets the enduring 'vitality'

24  of the *Insular Cases*. . . . Nonetheless, this Court is bound by decisions of the

25  Supreme Court.").

26

27

28

14

## CONCLUSION

For these reasons, the Court should dismiss the complaint pursuant to Rules 12(b)(1) or 12(b)(6).

Dated: August 2, 2024                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney
                                          General

                                          ALEXANDER K. HAAS
                                          Director, Federal Programs Branch

                                          LAUREN A. WETZLER
                                          Deputy Director

                                          */s/Michael J. Gerardi*
                                          MICHAEL J. GERARDI (DC Bar No.
                                          1017949)
                                          ANDREW E. CARMICHAEL
                                          Senior Trial Counsel
                                          ANDREW J. RISING
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L St. NW, Rm #12002
                                          Washington, DC 20005
                                          Tel: (202) 616-0680
                                          Fax: (202) 616-8460
                                          E-mail: michael.j.gerardi@usdoj.gov

                                          *Counsel for Defendants*

15